It's a privilege to have with us Judge Patty Sarris from the District Court in Massachusetts, who is sitting by designation. It's our privilege to have her with us and we welcome her to the Federal Circuit. We have an interesting array of cases, two cases submitted on the the court. I am Jean Zeiler, representing the appellant Norman Beaudoin in this case. This appeal comes before you for my final decision of the Merit Systems Protection Board, which we believe rendered its delegation of authority to its Administrative Judge Annullity. The Department of Veterans Affairs in Manchester, New Hampshire terminated Mr. Beaudoin's employment and from there the Administrative Judge, following live hearing, reversed the agency's decision and reinstated Mr. Beaudoin with no penalty and full back pay. The Board of Merit Systems decision and penalty. The question is how did we get such a dramatic turnaround between the trial fact and the Board? A searching scrutiny of the record is required where the decision of the Board departs so fully from the decision of the judge. The court has stated that the Board must defer to the Administrative Judge's determinations that are explicitly or implicitly based on observations of demeanor of testifying witnesses. The Board in this case avoided that deference by stating it did not reach the judge's credibility determinations. It claimed to have accepted the judge's findings of fact and corrected his erroneous conclusions of law. This is not true. The Board looked at... Why is this not true? It's not true because they made findings based simply on what I would characterize as physical movements of the appellant without any determination of how the judge interpreted those movements or comments in relation... The facts, as I understand it, were largely uncontested as to who did what, when, and who moved where, when, and who said what. Your Honor, I would agree there was... the whole interaction between this employee and the supervisor was largely agreed upon, what actually occurred and the interaction they had. The actual words used and the judge's findings based on the testimony he heard that he gave meaning to what was said was in dispute. And it is the appellant's opinion that the Board simply looked at the agency's version of events. It did not look at the judge's version of events. Well, no, it did look at the appellant's version of events. I mean, it accepted all of the judge's conclusions as to what actually happened. Did it not? I mean, where didn't it do that? What particular incident or words did it base its conclusions on that you say were different than what the AJ found? Well, one of the most blatant differences, I believe, occurred at the end of this interaction which the Board considered a blatant insolence by the appellant, occurred when he indicated that he asked the supervisor to leave. The supervisor said he ordered her to leave. The judge said that this was nothing more than a request for the supervisor to leave because the supervisor was blocking the exit. They had an agreement. They had a mediation agreement which was applicable to both of them. The judge recognized that. And the Board could only have substituted its credibility decision for that of the judge by saying he ordered her to leave. The judge said he didn't order her to leave. He asked her to leave. And he was reasonable in doing so because he had nowhere to go. And that was one finding. But is that a credibility or a finding of fact? I mean, it seems to me, you know, we talk credibility and then not credibility, but this case seems to be more about something else which is kind of something called context, which I don't call a legal term. That's just a, you know, and it seems to me when there's a difference between the whole context in which these events arose and therefore perhaps the consequence, why is that something that's a question of the A.J.? Why can't the Board also evaluate the whole context of that? I think the Board can evaluate the context, but I think it evaluated it without considering what the judge heard when the people testified before him. And the context was this, these people had a history of interactions with each other. They had an agreement that was found that the supervisor suggested that this employee should quit his job. The supervisor said she didn't say that. I just suggested he make a change and I would help him, I would coach him. And the employee was... Even assuming his, that version, assuming everything he says is true, I think one thing that was found was that he invaded her space, even though minimally, and there was enough room between them to cross his arms. That was undisputed. But that's very close. That's very, I mean, I just, it's a foot away. So why isn't that insolence? I disagree with the characterization that insolence and defiance are the same. I think the judge found he was defiant. And those two words have different meanings. Insolence has a meaning of a more confrontational meaning. In this case, as a judge found, and the judge specifically said, it was not insolent, it was defiant. And he understood the difference. This employee was defiant in the sense he was resisting his supervisor's criticism of his job, which the judge found was unjustified. He heard the supervisor, didn't know what she was talking about. Let's assume she's dead wrong, absolutely dead wrong. She thinks, you know, you're doing a lousy job, maybe he's doing a fabulous job, and she suggests that he leave, and that's not a fair thing to do. But then he comes right into her face after two prior incidents, apart from who had to leave. And why isn't that either defiance or insolence? That's not how you deal with a supervisor. Because I don't think in this, and it is a context, I don't think he did come into her face. What he found is that he, we're talking about a physical movement. They all agreed he approached her, he crossed his arms. But he had a reason for doing that, and it was because of what she said to him. And the judge found, contrary to what she testified, that she did say what the appellant said she said to him. And maybe that's true. His defiance was to say, essentially, I don't agree that I should quit my job, and I don't agree that I'm doing my job wrong. And the judge found he was truthful, credible. He believed what he said, as opposed to the supervisor. And I don't think the board can just reach in and say, well, we're just going to look at how he moved around the room. I mean, it was a small face. She wouldn't get out of his way. Not in this context. I mean, the finding was that he moved close to her, planted his feet and crossed arms, and said to her, what do you have to say to me? What do you have to say to me now? And the disagreement was whether it was a foot or a few inches. But there's no dispute on that, the rest of that having occurred, correct? That, I mean, just to this extent of how threatened he was, I think the judge found he wasn't threatening to her implicitly, that he was moving towards her. He did leave some space. And the judge found it significant that he had enough room to cross his arms. And the judge's reading, that indicated he was not right up in her face. And I just, the view is that the record had to be viewed as a whole, and not for the board to reach in and say, well, he walked up to her. Or he came up to her. And he said this. And she did nothing. Well, that's not what the judge found. But looking at the record as a whole, and looking at the findings that the administrative judge made, it seems to me that this simply turns not on credibility, but on the legal consequences of the facts found. And the board certainly is within its discretion in concluding that the legal consequences are other than what the administrative judge concluded. And that's my disagreement, is I think it did turn on credibility findings that the board ignored. I don't think it occurred just that we all agreed what happened. We agreed that these people had an interaction, and we do agree, you know, the appellant made some movements towards the supervisor. But there were findings that the judge made, hearing the testimony of the witnesses, that made him give credit to the appellant's version of events that justified the appellant's actions. And the board simply said, well, we're just going to pretend that doesn't matter, and say, well, he moved this way. He said this. We're going to ignore if she did anything. But isn't that the problem? I mean, you're relying, you're hanging your hat not really on differences in credibility, but on what the judge found, that in the context, some of this may have been justified. And isn't it fair game for the board to say, to dispute that? Or to say it doesn't matter, because even if it was justified, he still cannot, the agency is free to say that's another matter, but you're still not, even if provoked, you're not going to say that. And why is that outside of what the board is able to do, the agency in the first instance and the board in the second? I mean, the board obviously has its authority to change the decision of the judge and make the final decision. I just think that it can't just have designated this authority to a judge to hear the case, and have the judge sit there in a hearing, hear the witnesses, and make determinations about how these people interacted, and that it was very significant to him how they interacted, listening to their versions of events. And then for the board to step in and essentially say, well, we don't really agree with his version of events. We agree with everything the agency said. And in my reading, that is what they did. They said, we agree. He did everything wrong. She did nothing wrong. And employees aren't robots. They're allowed to speak to their supervisors. They're allowed to interact with their supervisors, and they are not allowed to be insubordinate and threatening to anybody in the workplace. You're well into your rebuttal. Do you want to reserve your time? I will just close and use up that time, I think. The board is required to look at the record as a whole. They did not do that in this case. And that record included credibility findings, differences in how the witnesses testified, and what the outcome was in the judge's view based on what was said. And the final part is the board looked in and looked at this employee's past disciplinary record. Well, the judge looked at that, too, and found that did not automatically make this individual at fault here. He listened to what they said during this interaction, and he found, despite what had happened in the past, this individual was not more at fault than the supervisor. And can we just blame one side? I guess we can, but I think when the judge has made findings that one side is not more to blame than the other side, then the appellant doesn't lose his job. And we would simply ask that the court respectfully reverse the MSPB's decision and reinstate the decision of the judge. All right. Thank you. You do have some time, so we will reserve that for you. Mr. Morgan? May it please the Court. The question before the Court is whether the record contains substantial evidence supporting the decision of the Merit Systems Protection Board that Mr. Bowden was disrespectful, insolent, and willfully resistant to his supervisor. On December 4, 2003, when he charged his supervisor and challenged her during what can best be described as an in-your-face confrontation, clearly the record supports the Board's determination for which reason the Board decision should be affirmed. Does the characterization of this interaction as a confrontation or an in-your-face discussion, does that represent some credibility assessment of the facts? I don't believe it does, Your Honor. I believe it's as Judge Prost identified earlier. It's a question of context. Judge Sarris mentioned that when you get in somebody's face, it's hard, I think, to argue that that's not confrontational. The Board, as a matter of fact, even the administrative judge in this case, found that this conduct by the appellant was defiant. And yet he then called it disrespectful or insolent. The problem with that conclusion, whether you characterize it as a question of what the facts say or a conclusion of law, is that the Board's law has consistently determined that insolence and disrespect are synonymous. As a matter of fact, even if we go back to some of the basic levels and look at Webster's New International Dictionary, defiant is defined as insolent. That definition was a defiant adopted by the Board in a case that the Board cited called Bennett v. Army. But the real question here is one of taking the context in which this exchange occurred, and then taking that context and putting it in the further context that Mr. Bowden had not done this on one occasion or two occasions, but instead on three occasions. And those three were, it wasn't just with one supervisor. As Dr. Levinson testified, this had been with two supervisors, different supervisors. The thing I sometimes find difficult here is what's a fact and what's a gloss on a fact. So that on the main point stressed by the appellant is the you need to leave. That may well be a fact in the sense of why it was asked. Was it because of the size of the room or because it was insolent? And that's one piece where I think that there was a little bit of a different factual gloss put on by the MSPB than the administrative judge. Yes, ma'am, I agree. But what happens here under this Court's decisions in both Abe and Conley to the extent that credibility determinations are not involved, the MSPB is free to substitute its judgment as to the significance of the facts and finding the facts. I couldn't tell how big the room was from what we had so that it was hard, whereas the administrative judge may have been in a better position to make that credibility finding. There was a drawing of some sort admitted or considered during this. I think that the important fact here is that evidently Ms. Mahoney had entered the room and the confrontation occurred in such an environment that she was between Mr. Bowden and the door. Now, what we have is a situation where Mr. Bowden approaches Ms. Mahoney. Now, whether this is he charged her, as she said, and she also said she was intimidated by that, but then further said, I'm not going to allow myself to be intimidated. And then when she got face to face or when Mr. Bowden got face to face with her, she offered Mr. Bowden the opportunity to avoid this confrontation. He didn't answer the question, despite her repeated requests, and ultimately said, I think you should leave or you have to leave. But there is just no way, and I think that the board was clear in this, there was no way to take these facts and conclude other than on December the 4th, 2003, Mr. Bowden for the third time was disrespectful, insolent, and willfully resistant to his supervisor. Now, there was some talk about credibility determinations, and the only expressed credibility determination that the administrative judge made related to whether Mr. Bowden was familiar with the equipment and the maintenance of that equipment. From that, the A.J. said, and it perhaps Ms. Mahoney was unjustified in her criticism of Mr. Bowden. That goes to a question of provocation. The board has said provocation is not a defense to disrespect. The board has further said, and this court has indirectly adopted this, it seems, that provocation is something which is considered in the reasonableness of the penalty. This was the third time. Even if somehow, contrary to the board's belief, the court could conclude that Mr. Bowden was somehow provoked into this action, there are ways to do things and ways not to do it. And Mr. Bowden was clearly aware of the way to do things. How do we know this? From the record, there was a meeting scheduled later that morning in which Mr. Bowden, with his union representative, was supposed to meet, I believe, with Ms. Mahoney. Clearly, he knew how to address these things in other than a confrontational, disrespectful, or insolent manner. And he did not do that. Judge Saris may have been referring to this. The question I have in my mind with respect to this case deals with the one particular aspect of the incidents, which is, in the case of the AJ, when you stepped forward and given the space, your supervisor had to step back after you brushed past her to go to the door. So that seemed to be a separate conduct that he was being charged with as being menacing, intimidating. And the board also included that. The board says, and brushed by her when she did not acquiesce to his quest to leave the area. But aren't the AJ's findings a fact? Really, just plain findings a fact in terms of what happened? And aren't those probative? And don't those resolve that dispute so that at least that particular aspect of this entire confrontation did not constitute disrespect of its coordination? Your Honor, I believe that the board addressed that, at least indirectly, if not directly, when the board said that the appellant demonstrated willful resistance to his supervisor when he refused the supervisor's request that he step back and did not immediately take his supervisor's offer of a time out. Further, the board then says, not only that, in a footnote on footnote three, it says, Mr. Bowden also demonstrated influence toward his supervisor in other ways, including advancing toward his supervisor, raising his voice, posing face-to-face with his supervisor with his arms crossed, challenging her to respond to his questions, and stating that his supervisor should leave the area. So almost in addition to what the court has pointed out, that maybe he didn't touch her, or if he did, as the AJ found any, was minimal or was incidental to his leaving. But the fact remains, there is no determination that Mr. Bowden, in this instance, was insolent, disrespectful, and willfully resistant. Moreover, the board... What was disrespectful and insolent about him, he, I mean, the AJ found he didn't rush against her, correct? That's correct, and Your Honor, even if... So what is insolent or disrespectful about that particular aspect? I don't know that there is anything insolent or disrespectful about that aspect in this case, but the fact remains that by itself, even if we were to assume that that wasn't disrespectful or insolent, the record is still replete with conduct which is. Finally, there's some, in the AJ's opinion, he says that Mr. Bowden was entitled to some support of that determination. The AJ cites a case called Daigle. Now, the problem with that authority is it has nothing to do with the facts of this case. In Daigle, what had occurred was Mr. Daigle was in an EEO counseling session, and to clean up his language, he told the EEO counselor that if I weren't a sane man, I'd go get a gun and shoot my supervisor. The threat, to the extent there was a threat, was not made to the supervisor. It wasn't made in the day-to-day work environment. That's not what is presented in this case, and for that reason, the board rejected the AJ's determination that perhaps Mr. Bowden was entitled to some leeway in this environment. This is not the first instance, as I had mentioned before, the VA was left with no alternative. As a matter of fact, even their penalty table said on the third instance, your only choice is dismissal. For all of these reasons, the government requests that this court affirm the Merit Systems Protection Board decision. Clearly, there is substantial evidence, and I would like to ask Mr. Bowden. Thank you very much. Thank you. Ms. Eiler, any comments? Comments less than the time allotted. Because this issue of prior discipline keeps coming up, I just want to emphasize that what supports the board's decision is this emphasis on what he did in this case, and the judge addressed that, and he nevertheless, listening to these two people discuss what happened that day, thought Mr. Bowden was credible in how he described what happened, and he did address the context, and he did say he was justified to some extent in what he did, and this reliance on this word defiant is not proper. Because the MSPB has other cases that say we think defiant is the same as insolent, it does not mean it was the same in this case, and the judge twice, at least, emphasized he was not insolent, he was not disrespectful, he was defiant, and there is a difference between those two words, and one is saying, I'm just not going to acquiesce to what you say, that I did my job wrong, and I should quit my employment. That's what the judge found, and the supervisor testified differently to both of those instances, and that was her provocation, and for the board to say provocation only goes to remedy, and then turn around and say, to penalty, and then turn around and say, but we're actually not going to consider it at all, is further damage to the judge's role in this case. He found enough to totally reverse this penalty. The board just stepped in, ignored what he did, and reinstated it without any other consideration. Thank you for your time.